PEOPLE ex rel. BROOKLYN HEIGHTS R. CO. v. PUBLIC SERVICE COMMISSION FOR FIRST DIST. et al.

(Supreme Court, Appellate Division, First Department. July 10, 1913.)

1. STREET RAILROADS (§ 12½, New, vol. 10 Key-No. Series)—REGULATION—PUBLIC SERVICE COMMISSION—STATUTORY AUTHORITY.

Public Service Commissions Law (Consol. Laws 1910, c. 48) § 50, subd. 2, empowering the commission after hearing to order street railroad corporations to change their equipment to promote public safety, authorizes the commission to make an order requiring a change with respect to the brake equipment of street cars, and require cars to be equipped with power brakes and geared hand brakes.

2. CERTIORARI (§ 21*)—QUESTIONS REVIEWABLE—ORDERS OF PUBLIC SERVICE COMMISSION.

The hearing and determination by the public service commission under Public Service Commissions Law (Consol. Laws 1910, c. 48) § 50, subd. 2, empowering the commission on its own motion to order a hearing as to the sufficiency of equipment of street cars and order changes therein to secure public safety, are judicial or quasi judicial, and reviewable by certiorari under Code Civ. Proc. § 2140.

[Ed. Note.—For other cases, see Certiorari, Cent. Dig. §§ 33, 34; Dec. Dig. § 21.*]

3. CERTIORARI (§ 68*)—REGULATION—EQUIPMENT—ORDERS OF PUBLIC SERVICE COMMISSION.

Evidence *held* not to preponderate against a determination by the public service commission ordering a change of equipment in street cars as

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

authorized by Public Service Commissions Law (Consol. Laws 1910, c. 48) § 50, subd. 2, so as to require that cars shall be equipped with power brakes and geared hand brakes, and the court on certiorari will not interfere.

[Ed. Note.—For other cases, see Certiorari, Cent. Dig. §§ 180–182; Dec. Dig. § 68.*]

4. STREET RAILROADS (§ 12½, New, vol. 10 Key-No. Series)—REGULATION—ORDERS OF PUBLIC SERVICE COMMISSION—CONCLUSIVENESS.

The Legislature has by the Public Service Commissions Law (Consol. Laws, c. 48) vested the public service commission with discretionary powers, and the court may not annul an order of the commission unless the evidence clearly and convincingly shows that the determination is erroneous.

Certiorari proceedings by the People of the State of New York, on the relations of the Brooklyn Heights Railroad Company, the Brooklyn, Queens County & Suburban Railroad Company, the Coney Island & Gravesend Railway Company, the South Brooklyn Railway Company, and the Nassau Electric Railroad Company, against the Public Service Commission of the State of New York for the First District and the Commissioners thereof and others to review orders of the Commission relating to the equipment of cars with power brakes and geared hand brakes. Proceedings of the commission affirmed, and writs dismissed.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

D. A. Marsh, of Brooklyn (Brainard Tolles, of New York City, on the brief), for relators.

Henry H. Whitman, of New York City (George S. Coleman, of New York City, on the brief), for respondents.

LAUGHLIN, J. There are five separate certiorari proceedings by the respective relators, who are operating street railway companies and are known as the Brooklyn Rapid Transit System, and it is stated in the brief of the respondents that they are controlled by a holding corporation known as the Brooklyn Rapid Transit Company. Each proceeding presents the same question, and they have been heard together.

The authority of the public service commission to make an order in the premises is conferred by section 49, subd. 2, and section 50 of the Public Service Commissions Law (Consol. Laws 1910, c. 48). Subdivision 2 of said section 49, so far as material to the question under review, provides as follows:

"Whenever the commission shall be of opinion, after a hearing, had upon its own motion or upon complaint, that the regulations, practices, equipment, appliances, or service of any such common carrier, railroad corporation or street railroad corporation in respect to transportation of persons or property within the state are unjust, unreasonable, unsafe, improper or inadequate, the commission shall determine the just, reasonable, safe, adequate and proper regulations, practices, equipment, appliances and service thereafter to be in force, to be observed and to be used in such transportation of persons and property and so fix and prescribe the same by order to be served upon

every common carrier, railroad corporation and street railroad corporation to be bound thereby."

Section 50 provides, among other things, as follows:

"If in the judgment of the commission having jurisdiction, additional tracks, switches, terminals or terminal facilities, stations, motive power, or any other property, construction, apparatus, equipment, facilities or device for use by any common carrier, railroad corporation or street railroad corporation or in connection with the transportation of passengers or property ought reasonably to be provided, or any repairs or improvements to or changes in any thereof in use ought reasonably to be made, or any additions or changes in construction should reasonably be made thereto in order to promote the security or convenience of the public or employés, or in order to secure adequate service or facilities for the transportation of passengers or property, the commission shall, after a hearing either on its own motion or after complaint, make and serve an order directing such repairs, improvements, changes or additions to be made within a reasonable time and in the manner to be specified therein."

On the 7th day of July, 1911, the commission on its own motion determined to institute a proceeding which it designated "Case No. 1369 Car Brakes," and entitled "In the matter of the hearing on the motion of the commission on the question of changes and improvements in or additions to the equipment of all street railroad corporations, and the receivers of street railroad corporations, owning operating, managing or controlling any street surface railroad in the city of New York, or any cars used thereon or in connection therewith, in respect of brakes on surface cars operated in the city of New York," and by resolution duly adopted formally resolved to hold a public hearing on the 20th day of the same month to determine whether the corporations and receivers described in the title of the proceedings should be ordered to equip all double-truck surface cars operated by them in the city of New York with "power brakes of a type to be approved by the Commission," and whether any other changes, improvements in, or additions to the equipment then in use "should be ordered as necessary to the effective and safe use and operation of brakes on said cars," and providing for five days' notice of the hearing to the different corporations and their representatives. Notice of the hearing was duly given, and the relators appeared by counsel. Hearings were duly had before one of the commissioners on the 20th day of July, the 14th day of August, and the 18th and 20th days of September, 1911, and at said hearings evidence was offered and received in behalf of the commission and in behalf of the relators, and no evidence offered by the relators was excluded.

On the 10th day of October thereafter the commission adopted a resolution directing, among other things, that after June 1, 1912, "all passenger double-truck surface cars in service weighing over twenty-seven thousand pounds shall be equipped with power brakes and geared hand brakes"; that after June 1, 1913, "all passenger double-truck surface cars in service weighing over twenty-five thousand one hundred pounds shall be equipped with power brakes and geared hand brakes"; that after June 1, 1912, "all other passenger double-truck surface cars in service weighing twenty-five thousand one hundred pounds, or less, shall be equipped with geared hand brakes," and the

corporations and receivers were duly required to notify the commission within five days after service of a copy of the order whether or not they accepted and would obey the same. The relators thereafter gave notice under date of November 1, 1911, that they did not accept and would not obey the order, and requested a rehearing on the ground that the requirements of the order with respect to the equipment of cars with geared hand brakes were not within the scope of the inquiry as stated in the resolution of the commission; that the evidence before the commission did not warrant the order, and that sufficient opportunity was not afforded the relators to give evidence "with reference to the comparative efficiency of geared hand brakes and staff and chain brakes," or with reference to their efficiency or the necessity for such brakes when power brakes were used, or whether or not it would be practicable to equip the cars with geared hand brakes, and for a rehearing with respect to the order in so far as it related to brakes on cars other than passenger cars. The application for a rehearing was granted on the 14th day of November, 1911, and the 20th day of November was fixed for commencing the rehearing. On the rehearing which was continued from time to time considerable further evidence was offered both on behalf of the commission and of the relators; and thereafter and on the 21st day of June, 1912, the commission duly made a final order on the rehearing, and thereby eliminated the requirement of the original order with respect to brakes on cars other than passenger cars, and extended the time of the relators to comply with the order, and the order further provided that for good cause shown a further extension of time would be granted, but in all other respects the original order remained without modification.

[1, 2] The Public Service Commissions Law has been sustained as constitutional. Gubner v. McClellan, 130 App. Div. 716, 115 N. Y. Supp. 755. By the statute quoted the Legislature clearly conferred authority upon the public service commission to make the order requiring a change with respect to the brake equipment of the cars. The legislative authority of the commission to make the order is not questioned. The commission was authorized to institute the inquiry on its own initiative, and the hearing and determination are deemed judicial or quasi judicial proceedings, and are subject to review by the writ of certiorari pursuant to the provisions of the Code of Civil Procedure. People ex rel. Joline v. Willcox, 129 App. Div. 267, 113 N. Y. Supp. 861, affirmed 194 N. Y. 383, 87 N. E. 517. See, also, People ex rel. N. Y. C. Co. v. Public Service Comm., 195 N. Y. 157, 88 N. E. 261.

[3] The questions relating to the merits which are to be determined by the court upon the hearing are prescribed in the five subdivisions of section 2140 of the Code of Civil Procedure. As has been stated, the jurisdiction of the commission is not challenged, and it is not claimed that the authority conferred has not been exercised in the manner required by law, or that any rule of law has been violated to the prejudice of the relators. No question, therefore, arising under any of the first three subdivisions of said section is presented for review, and the only points upon which we are asked and authorized

142 N.Y.S.—60

to review the determination of the commission arises under subdivisions 4 and 5 of said section; and they are as to whether there was any competent proof of all facts necessary to be proved to authorize the determination, and, if so, whether the evidence preponderates against the determination of the commission to such an extent that a verdict of a jury affirming the existence of the facts determined by the commission, if rendered in an action in the Supreme Court triable by a jury, would be set aside by the court as against the weight of the evidence. It is not entirely clear that the relators question whether there was any evidence to sustain the order of the commission, but we will assume that they do. Both the original hearing and the rehearing were had before one of the commissioners, who in each instance wrote an opinion showing that the evidence and the questions presented received careful consideration; and it does not appear that there was any dissenting vote on the adoption of the orders.

It appears that all of the cars to which the order as modified applies were equipped with brakes known as plain staff brakes. The first provision of the order relates to passenger double-truck surface cars weighing over 27,000 pounds, and as modified requires that they be equipped with power brakes and geared hand brakes from February 24, 1913. The relators owned at the time of the hearing 564 cars which would be subject to this provision of the order. The relators also owned at the time of the hearing 637 cars weighing between 25,100 and 27,000 pounds which by the terms of the order as modified are required to be equipped with power brakes and geared hand brakes from February 24, 1914. The number of cars owned by the relators at the time of the hearing which weighed 25,100 pounds or less, and which are required to be equipped with geared hand brakes from February 24, 1913, was 624. It also appeared that at the time of the hearing the heavier cars on relators' lines were equipped with both power and hand brakes. The relators do not, I think, seriously complain of the order in so far as it affects future purchases of cars, for one of their witnesses testified that all new cars purchased by the New York Railways Company are equipped with power brakes, and the evidence shows that all cars thus equipped also have hand brakes, and there is no evidence that the new cars purchased by the relator are not equipped with both kinds of brakes. Their complaint is that, in so far as it requires that changes be made in the equipment of cars on hand, it is unnecessary, and that, inasmuch as it will involve an expenditure of more than half a million of dollars, it is unreasonable. It appears that all the other street railway companies in the city of New York are affected in the same manner, although not to the same extent, as the relators, and that they have acquiesced in and accepted the order. The relators own slightly over one-third of the cars in operation in the city.

It appears that in the year 1908 99 per cent. of the cars owned by 84 street railway companies which constituted the International Street Railway Congress, a continental organization, were equipped with power brakes. It was also shown that in eight large cities of the United States all street cars were equipped with air brakes, and that in six

other large cities, including Chicago, double-truck street cars were equipped with such brakes, and that all such cars in the state of New Hampshire were required by law to be and were so equipped. The United States Census Reports show that the use of the power brake has increased from 11.8 per cent. of the total number of cars in 1902 to 37.8 per cent. in 1907, and that during this period the number of cars equipped with air brakes increased 23.779, while the total number of cars in use only increased 18.859. One witness testified that an electric magnetic brake is used by a traction company near Pittsburg, but with that exception there is no evidence with respect to the kind or proportion of the different kinds of brakes used on street cars elsewhere. There are two kinds of power brakes, namely, air brakes, which are applied by compressed air, and electrical brakes, where the power is applied by electricity. The operation of the latter brake is not explained; but the evidence shows that the operation of the air brake is simple, and that by a slight turn of a small handle located near the controller a valve is opened which permits air from a tank to operate on a piston which moves in the brake cylinder and is attached to the brake levers or rigging. There are also two classes of hand brakes, one of which is known as the "staff and chain" brake. It is operated by turning the handle on the staff in a circle, which winds the chain around the staff, and thus forces the brake against the wheel. The other style is the "geared" hand brake, thus taking up the slack of the chain more quickly, and on using it the chain winds on a drum which enables the motorman to exert more direct and greater pressure on the brake shoe than with the staff and chain brake. In applying the air brake the lever is moved one notch for service stops, which includes receiving and discharging passengers and ordinary slackening of speed at crossings or elsewhere; and two notches causing a larger opening for the compressed air to make quick stops known as emergency stops.

The transportation engineer of the commission, who had occupied the position about two years, testified that he believed that since his connection with the commission no cars had been added to the service in the city of New York which were not equipped with air brakes; that in his opinion all double-truck cars should be equipped with air brakes, and that in any event all cars weighing more than 25,000 pounds should be so equipped, and he assigned as reasons therefor that the power brake may be applied more quickly and with less exertion on the part of the motorman, and that power brakes are more efficient in preventing accidents with cars weighing more than 25,000 pounds than hand brakes. An electrical engineer who had been in the employ of the commission for a period of $4\frac{1}{2}$ years, and had made a special study with respect to street surface car brakes, and was entirely familiar with them, testified that in his opinion air brakes are more efficient than hand brakes for use on all the double-truck cars of the Brooklyn Rapid Transit System. His testimony shows that his opinion is predicated upon the fact that the air brake has only to be set in motion by the motorman, and that its operation is uniform and certain; whereas the efficiency of the hand brake depends, not

only upon the competency of the motorman, but his physical and mental alertness and condition and the judgment he exercises at a given time.

On the first hearing counsel for the different lines operating in Greater New York were asked by the commissioner for an expression of opinion with reference to the relative efficiency of hand and power brakes, and it appears to have been generally conceded at that time that air brakes were preferable for the heavier cars. On the part of the relators testimony was given by the superintendent of rolling stock in the shops of the Metropolitan Street Railway Company to the effect that he considered it "questionable" whether or not cars weighing from 25,000 to 27,000 pounds required air brakes; but he admitted that the so-called pay-as-you-enter cars, which weighed 30,530 pounds, should be equipped with air brakes. This view with respect to the pay-as-you-enter cars was sustained by the testimony of the superintendent of transportation of the same company; but he expressed the opinion that experiments and tests had demonstrated that for the lighter cars the hand brakes were more efficient.

The commissioner in his opinion rendered at the time of the issuing of the original order states that on the hearings the statements and arguments of counsel and witnesses were directed to the question as to what was the weight of cars which formed the dividing line between cars that could be safely and efficiently operated by hand brakes, and those which were so heavy that they should be equipped with power brakes. Records of accidents in the operation of the different classes of cars according to their brake equipment were received in evidence, and testimony was given on the part of the relators tending to show that motormen operated cars more safely with hand brakes than with air brakes, and the reason assigned for this was that motormen "are inclined to take more chances" with the "power brake than with the hand brake." On that evidence it is argued in behalf of the commission that the motormen recognize the greater efficiency of the air brake in thus taking greater chances of accidents with them; and that, if the motormen were properly trained, they would exercise better judgment in using air brakes which would then be more efficient than hand brakes.

An expert called in behalf of the relators admitted that the "air brake has a tremendous advantage over the hand brake in the speed with which it is applied." After the first hearing, this expert directed and supervised a series of tests made with cars operated by three different motormen to determine the relative efficiency of the staff and chain brake, the geared hand brake and the air brake, and he testified that the tabulated results of these tests showed that a particular type of geared hand brake was the most efficient and the "best brake we have" for stopping cars at all speeds and all loads. The tests, however, conducted with the brake which in the opinion of the expert was the best, showed results differing as much as one-tenth in the distance required to make stops by the different motormen operating the same cars at the same speed and under like circumstances.

Counsel for the commission contends that these tests do not furnish

a fair criterion by which to judge of the relative efficiency of hand and power brakes, for the reason that the cars during the tests were operated by skilled motormen who were applying the brakes for the particular purpose of making quick stops, and under circumstances quite different from those that would be encountered in the ordinary operation of the car along a crowded thoroughfare when their attention would necessarily be diverted by the conditions which confronted them, and rendered the application of the brakes necessary. There is much force in that contention. Manifestly the time occupied in moving a lever which requires no particular agility or physical strength is so much shorter than the time required in exerting considerable physical strength in turning a circular hand brake with sufficient force to tighten the brake shoe that there is no comparison between the two with respect to the question as to which could be applied with greater efficiency in an emergency. The motorman who operated the cars for most of the tests was in the employ of one of the relators, and testified, among other things, that motormen never used the hand brake unless the air brake was out of order, and that such were their orders. It is contended by counsel for the relators that both brakes are not needed, and that compliance with the order in this regard will involve a large and unnecessary expense. The evidence shows that the heavy cars equipped with air brakes are also equipped with hand brakes, and the reason for this is to afford security in the event that for any reason the air brakes were out of order.

[4] This statement of the evidence is sufficient to show that it does not preponderate against the determination made by the public service commission in ordering the change of equipment. In the interests of the convenience and safety of the public the Legislature vested the commission with broad discretionary powers, and it would require clear and convincing evidence that their determination on the facts was erroneous to warrant the court in annulling the order.

It follows that the proceedings of the public service commission in each case should be affirmed, and the writ dismissed, with $50 costs and disbursements. All concur.

---

(81 Misc. Rep. 324.)

### In re HUDSON RIVER TOLL BRIDGE.

(Supreme Court, Special Term, Saratoga County. June, 1913.)

1. EMINENT DOMAIN (§ 169*)—PURCHASE BY COUNTY—CONDEMNATION PROCEEDINGS.

Under Highway Law (Consol. Laws 1909, c. 25) § 265, providing that, when the commissioners appointed to appraise a toll bridge sought to be condemned by a county shall determine the value of the bridge, the Attorney General shall certify such determination to the boards of supervisors, which shall adopt a resolution approving the purchase of the bridge and providing for payment, the approval of the purchase rests in the discretion of the boards.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 461; Dec. Dig. § 169.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes