evidence fairly establishes that the matter was taken from Perkins & Trautwein on account of what Crowley & Bolger considered an excessive claim for services, and I think, as the referee concludes, that the preponderance of evidence indicates that it never was agreed that the respondent should receive for his services 50 per cent. of the amount collected.

It does not appear, however, that Crowley & Bolger made any further demand upon the respondent after the receipt of the second remittance of $75, and the petitioner concedes that the retaining of the money by the respondent was not a conversion. The evidence as to the retainer is, however, important in considering the motive of the respondent in indorsing his client's name on the check. As stated by the referee:

"No loss ensued to his client as a necessary incident of the manner in which the respondent indorsed the check. From such an action, however, surreptitious intention might be, and in the state of facts shown by the record should be, inferred."

The referee concludes:

"The respondent's handling of the matter from the time of the receipt of the check from the comptroller of the state of New York shows that he lacked a proper appreciation of ethical conduct, and his acts should not pass unnoticed. I find the respondent guilty of misconduct in his profession."

We think the act of the respondent in indorsing a simulated signature of his client upon the check drawn to his client's order was highly improper, and was undoubtedly done so that, having obtained possession of the cash, he would be in position to assert his claim.

For his professional misconduct the respondent is suspended for two years, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions to be incorporated in the order to be entered hereon. All concur.

---

(173 App. Div. 826)

PEOPLE ex rel. NEW YORK & Q. C. RY. CO. v. PUBLIC SERVICE COMMISSION FOR FIRST DIST. et al.

(Supreme Court, Appellate Division, First Department. July 10, 1916.)

STREET RAILROADS ⬤═▷12—ABANDONMENT OF PORTION OF ROUTE—APPROVAL OF PUBLIC SERVICE COMMISSION—ORDER—REVIEW.

The order of the public service commission refusing to approve the abandonment by a street railway of a portion of its route, under Railroad Law (Consol. Laws, c. 49) § 184, will not be disturbed, where the evidence is conflicting, unless the order is clearly against the preponderance of the evidence.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 14, 19; Dec. Dig. ⬤═▷12.]

Certiorari by the People, on the relation of the New York & Queens County Railway Company against the Public Service Commission for

the First District and others, to review an order for the establishment of a new station.  Writ dismissed, and order affirmed.

Argued before CLARKE, P. J., and McLAUGHLIN, SCOTT, DOWLING, and DAVIS, JJ.

Arthur G. Peacock, of New York City, for relator.
H. M. Chamberlain, of New York City, for respondents.
Samuel J. Rosensohn, of New York City, for city of New York.

DOWLING, J.   The relator, hereinafter called the Company, operates street railways in the borough of Queens, city of New York. One of its routes runs from the Astoria (or Ninety-Second Street) Ferry, east along Flushing avenue to Ehret avenue (a private road), and thence northerly along that avenue to North Beach.  Its franchise permitted it to build out on Flushing avenue as far as its junction with Jackson avenue and thence to Flushing, to which point its tracks along Jackson avenue now extend.   On December 8, 1914, the Public Service Commission for the First District (hereinafter called the Commission) passed a resolution reciting the failure of the Company "to construct and operate that portion of its franchise route on Flushing avenue, between Ehret avenue and Jackson avenue, in the borough of Queens, as required by law," and directing its counsel "to commence an action or proceeding in the Supreme Court in the name of the Commission for the purpose of having such violations stopped and prevented, either by mandamus or injunction."   The petition for a writ of mandamus to compel the company to construct the uncompleted portion of its road on Flushing avenue, between Ehret and Jackson avenues, was accordingly prepared and filed, and an order issued out of the Supreme Court, County of Kings, on January 4, 1915, requiring the Company to answer the petition, and in case of default the writ prayed for was to be issued.   An answer was duly interposed, from which it appeared that in the interim, and on December 10, 1914, the directors of the Company had adopted a declaration of abandonment of the franchise route on Flushing avenue, between Ehret and Jackson avenues, which was approved by the stockholders on January 13, 1915, on which day the Company filed with the Commission its petition that the latter approve the declaration of abandonment.

The petition in question is based on the ground that "it is not necessary" that a railway be constructed along Flushing avenue, from Ehret to Jackson avenues, and along certain streets and avenues not pertinent to the question under consideration.   After a full hearing the Commission on April 30, 1915, made its order disapproving the declaration of abandonment, "with leave to said Company to adopt and present a new declaration of abandonment covering all said portions of route, except that in Flushing avenue between Ehret avenue and Jackson avenue, which new declaration of abandonment will be approved by the Commission upon its presentation upon the evidence already adduced."   A motion for a rehearing was denied.  As the portion of the route along Flushing avenue was the only one the Company was specially interested in abandoning, a writ of certiorari was

obtained to review the action of the Commission in denying the desired approval of its abandonment. The application by the Company was made under section 184 of the Railroad Law (chapter 481, Laws 1910; chapter 49, Consolidated Laws), the first sentence of which reads:

"Any street surface railroad corporation may declare any portion of its route which it may deem no longer necessary for the successful operation of its road and convenience of the public to be relinquished and abandoned."

The section then sets forth the procedure to be followed thereupon, including the requirement that the approval of the Commission must be given thereto, to make it effective. In this proceeding the Commission heard witnesses for and against the application. To support it, the Company called its president and experts to show that there was no necessity for the extension in question, in view of the present railway service in the vicinity, and as the character of the adjoining territory was such that development in a large degree could not be expected soon, while the convenience of the public was amply served by existing lines, so that this additional two miles of railway were not required. On the other hand, residents of East Elmhurst (which is the section to and through which the line, if constructed, would run), who testified, were all certain that the convenience of the public would be materially served by the completion of the missing stretch of track and gave reasons for their belief, based on local conditions, with which they were well acquainted.

Under these circumstances an issue of fact was presented, which it was peculiarly within the province of the Commission to decide, and with their determination we should not interfere, unless, as was said in People ex rel. Brooklyn Heights R. R. Co. v. Public Service Commission, 157 App. Div. 698, 142 N. Y. Supp. 942, the evidence preponderates against the determination made by the Commission, for "in the interests of the convenience and safety of the public the Legislature vested the Commission with broad discretionary powers and it would require clear and convincing evidence that their determination on the facts was erroneous to warrant the court in annulling the order." We find in the present proceeding that the evidence does not preponderate against the determination made by the Commission, but in its favor; nor is there any evidence before us to show that the determination on the facts was erroneous.

The determination of the Commission will therefore be confirmed, and the writ dismissed, with $50 costs and disbursements to respondents. All concur.